BRUCE V. SPIVA
(Cal. Bar No. 164032)
BSpiva@perkinscoie.com
ANDREW E. SHIPLEY
(*pro hac vice* application pending)
AShipley@perkinscoie.com
ANDREW J. VICTOR
(*pro hac vice* application pending)
AVictor@perkinscoie.com
**PERKINS COIE LLP**
700 13th Street, NW, Suite 600
Washington, DC 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

ALISHA C. BURGIN
(Cal. Bar No. 286269)
ABurgin@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant
NORTHROP GRUMMAN SYSTEMS
CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KST DATA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NORTHROP GRUMMAN SYSTEMS CORPORATION and DOES 1 through 25,<br><br>Defendants. | Case No. 2:17-cv-5125-MWF-PJW<br><br>**NORTHROP GRUMMAN SYSTEMS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>(Fed. R. Civ. P. 12(b)(6)) |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   OVERVIEW ............................................................................................. 1

III.  BACKGROUND FACTS ......................................................................... 4

IV.   ARGUMENT ............................................................................................ 7

    A.    STANDARD OF DECISION ........................................................ 7

    B.    NORTHROP GRUMMAN DID NOT BREACH THE AWARD ....... 7

        1.    NORTHROP GRUMMAN'S PURPORTED FAILURE TO PROVIDE FORECASTS WAS IMMATERIAL ................ 8

        2.    NORTHROP GRUMMAN DID NOT BREACH ITS DUTY TO NEGOTIATE IN GOOD FAITH UNDER SECTION 4.6 ........................................................... 10

        3.    NORTHROP GRUMMAN DID NOT TERMINATE THE AWARD FOR CONVENIENCE .................................... 11

    C.    NORTHROP GRUMMAN DID NOT BREACH ITS DUTY OF GOOD FAITH AND FAIR DEALING .............................................. 12

        1.    KST SEEKS TO IMPOSE IMPLIED DUTIES THAT CONTRADICT THE AWARD'S EXPRESS TERMS ........... 13

        2.    NO REASONABLE INFERENCE CAN BE DRAWN FROM THE COMPLAINT THAT NORTHROP GRUMMAN LACKED SUBJECTIVE GOOD FAITH OR THAT ITS CONDUCT WAS OBJECTIVELY UNREASONABLE ......................................................... 14

    D.    KST'S PROMISSORY ESTOPPEL CLAIM IS SUPERFLUOUS AND LACKS THE ESSENTIAL ELEMENT OF JUSTIFIABLE RELIANCE ......................................................... 16

V.    CONCLUSION .......................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

CASES

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 7

*Block v. eBay, Inc.*,
    747 F.3d 1135 (9th Cir. 2014) ......................................................... 7, 8

*Brown v. Grimes*,
    192 Cal. App. 4th 265 (Cal. Ct. App. 2011) ...................................... 9

*Carma Developers v. Marathon Dev.*,
    2 Cal. 4th 342 (Cal. 1992) .............................................. 12, 13, 14, 15

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*,
    211 Cal. App. 4th 230 (Cal. Ct. App. 2012) .................................... 16

*Eksouzian v. Albanese*,
    No. CV 13-00728, 2015 WL 4720478 (C.D. Cal. Aug. 7, 2015) ........ 9

*Enforcement Support Agency, Inc. v. Cnty. of San Diego*,
    No. D057315, 2011 WL 5416185 (Cal. Ct. App. Nov. 9, 2011) ...... 12

*Healy v. Brewster*,
    380 P.2d 817 (Ca. 1963) .................................................................. 16

*Hini-Szlos v. Carter*,
    No. B219941, 2010 WL 3704178 (Cal. Ct. App. Sept. 23, 2010) .... 8, 9

*In re Bankamerica Sec. Litig.*,
    636 F. Supp. 419 (C.D. Cal. 1986) .................................................. 10

*Inland Concrete Enterps., Inc. v. Kraft*,
    318 F.R.D. 383 (C.D. Cal. 2016) ...................................................... 8

*Ins. Underwriters Clearing House, Inc. v. Natomas Co.*,
    184 Cal. App. 3d 1520 (Cal. Ct. App. 1986) .................................... 9

*Johnson v. Fed. Home Loan Mge. Corp.*,
    793 F.3d 1005 (9th Cir. 2015) ........................................................... 7

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
    60 Cal. App. 3d 885 (Cal. Ct. App. 1976) ................................. 17, 18

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4
*Minich v. Allstate Ins. Co.*,
   193 Cal. App. 4th 477 (Cal. Ct. App. 2011) ................................................. 10, 12

5
6
*Money Store v. Southern California Bank*,
   98 Cal. App. 4th 722 (Cal. Ct. App. 2002)................................................. 16, 17

7
*Navellier v. Sletten*,
   106 Cal. App. 4th 763 (Cal. Ct. App. 2003) ................................................... 9, 11

8
9
*Odinma v. Aurora Loan Servs.*,
   2010 WL 2232169 (N.D. Cal. 2010)................................................................. 16

10
11
*Sackett v. Spindler*,
   248 Cal. App. 2d 220 (Cal. 1967) ........................................................................ 9

12
13
*Schwartz v. KPMG*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................ 5, 6

14
15
*Unical Enterps., Inc. v. Am. Ins. Co.*,
   No. CV 05-3511 CBM, 2005 WL 6133691 (C.D. Cal. Dec. 14,
   2005).................................................................................................................... 14

16
17
*US Ecology, Inc. v. State*,
   129 Cal. App. 4th 887 (Cal. Ct. App. 2005) .................................................... 16

18
**STATUTES**

19
Cal. Civ. Code § 1636........................................................................................... 7

20
Cal. Civ. Code § 1641........................................................................................... 7

21
**RULES**

22
California Rules of Court, Rule 8.1115 ................................................................. 8

23
Federal Rule of Civil Procedure 12(b)(6)......................................................... 1, 7

24
Local Civil Rule 11-3.9 ......................................................................................... 8

25
**OTHER AUTHORITIES**

26
27
23 WILLISTON ON CONTRACTS § 63.3 (4th ed.) ....................................................... 8

28

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

## I.  INTRODUCTION

This is a breach of contract case brought by Plaintiff KST Data, Inc. ("KST") against Defendant Northrop Grumman Systems Corporation ("Northrop Grumman").  As discussed more fully below, Northrop Grumman entered into a contract with KST for the purchase of computer equipment.  During the term of the contract, KST was suspended from contracting with the federal government and was the subject of a federal criminal investigation.  At that point, as provided for by the contract, Northrop Grumman paused doing business with KST pending the outcome of the investigation; during the pendency of the investigation, the contract expired.  Misunderstanding its rights under the contract, KST filed the Complaint, asserting three counts against Northrop Grumman: (1) breach of contract, (2) breach of the implied duty of good faith and fair dealing, and (3) promissory estoppel.  In response, Northrop Grumman moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and submits this Memorandum in support thereof.  Simply stated, the facts pled in the Complaint, construed in the light most favorable to KST, fail to state a claim upon which relief can be granted under any of the counts.  Accordingly, the Court should dismiss the Complaint with prejudice.

## II.  OVERVIEW

At issue are the rights and obligations under Corporate Award #3263 (the "Award") entered into by Northrop Grumman and KST.  Under the Award, KST was granted a non-exclusive ability to sell computer equipment to "all elements of Northrop Grumman."  These "elements" — business units within Northrop Grumman — had the right (but not the obligation) to purchase computer equipment from KST at prices set forth in an attachment to the Award.  Pursuant to the Award, Northrop Grumman would periodically provide KST with a forecast of its projected future purchasing requirements for KST's planning purposes.

During the Award term, the National Aeronautics and Space Administration

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

("NASA") suspended KST for serious misconduct based on evidence gathered during a Department of Justice ("DOJ") criminal investigation into KST's small business status. While KST was suspended, Northrop Grumman turned to an alternate source for its computer equipment needs. KST subsequently entered into an Interim Administrative Agreement ("IAA") with NASA that allowed KST to resume selling to the federal government. The government investigation, however, remained open. As part of the IAA, KST acknowledged in writing that adequate cause had existed for its suspension.

Asserting that it had been "cleared" by NASA, KST asked Northrop Grumman to place orders against a previously provided forecast of equipment. Northrop Grumman, however, decided to await the outcome of the government's criminal investigation before placing any additional orders. At no time did Northrop Grumman ever state that it had terminated or intended to terminate the Award.

The Award term ended before the government's investigation concluded. In the Complaint, KST alleges that Northrop Grumman's failure to place orders pending the outcome of that investigation constituted a breach of its contractual and good faith duties and a termination of the Award. Specifically, KST alleges that Northrop Grumman breached the Award by failing to provide new forecasts, and by failing to purchase KST's inventory pursuant to the termination for convenience clause. KST alleges that Northrop Grumman breached the duty of good faith and fair dealing by failing to place orders against previously provided forecasts, failing to advise KST of future requirements, and/or failing to advise KST that it was terminating the Contract. Finally, KST alleges that it may recover under promissory estoppel because of promises made by Northrop Grumman to purchase inventory held by KST.

As set forth more fully below, neither the law nor the facts as alleged can provide KST the relief it seeks. KST's breach of contract claim based on Northrop

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1  Grumman's purported failure to provide forecasts fails in light of the factual
2  allegation that Northrop Grumman advised KST it would not place orders pending
3  the outcome of the criminal investigation. The forecasts constituted Northrop
4  Grumman's estimates of its likely needs for computer equipment, and were
5  provided as a tool for KST to use for internal planning purposes. They were neither
6  orders nor binding commitments to order. By advising KST of its decision to
7  forego placing orders until the government had concluded its investigation,
8  Northrop Grumman provided KST with the material information it needed for
9  planning purposes. To base a breach of contract claim over the lack of a formal
10 document entitled "Forecast" is to exalt form over substance. In short, no
11 reasonable inference can be drawn that Northrop Grumman's alleged failure to
12 provide a forecast constituted a material breach of contract.

13     KST's claim that Northrop Grumman terminated the Award for convenience
14 rests entirely on conclusory characterizations belied by the factual allegations
15 themselves. In particular, KST cannot and does not allege that Northrop Grumman
16 ever sent an actual written notice of termination as required by the Award. Instead,
17 KST asserts that Northrop Grumman's written decision to "await the outcome of
18 the federal investigation" constituted a notice of termination. Thus, regardless of
19 how KST styles this claim, it distills into an allegation that Northrop Grumman
20 constructively terminated the Award. As set forth more fully below, the doctrine of
21 constructive termination does not apply to this case as a matter of law.

22     KST's breach of good faith and fair dealing claim fares no better. The
23 covenant of good faith and fair dealing does not require a party to take actions
24 inconsistent with the contract's express terms. Nor does a party violate this implied
25 duty if it acted in subjective good faith, and if its conduct was objectively
26 reasonable. Under the Award, Northrop Grumman had no obligation to place
27 orders against forecasted estimates or for any minimum amount; KST's claim
28 contravenes this express contract language. In addition, given KST's explicit

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1  acknowledgment that adequate cause existed for its suspension, Northrop Grumman
2  had a good faith subjective and objectively reasonable basis for awaiting the
3  outcome of the government investigation before placing further orders.

4      Lastly, the existence of the Award renders the promissory estoppel count
5  superfluous under California law, as the Award's terms and conditions address the
6  same subject matter as the alleged promises underlying this claim.  In any event,
7  KST fails to allege any detrimental reliance based on Northrop Grumman's alleged
8  extra-contractual promises.  To the contrary, KST alleges that it procured the
9  inventory at issue in this lawsuit based on a forecast provided by Northrop
10  Grumman in September 2015.  The extra-contractual promises underlying the
11  promissory estoppel claim were allegedly made "between September 2015 and June
12  2016."  The Complaint does not allege any facts demonstrating that KST relied on
13  these extra-contractual promises to procure any of the inventory at issue in this
14  case.  As justifiable reliance is an essential element of any promissory estoppel
15  claim, this count must be dismissed.

16  **III.   BACKGROUND FACTS**

17      Northrop Grumman and KST entered into the Award on August 1, 2010.
18  Compl. ¶ 20.  Under the terms of the Award, KST was authorized to sell computer
19  equipment to "all elements of Northrop Grumman" at prices set forth in an
20  attachment to the Award.  Award at 1, Recitals 1-2; §§ 2.1, 2.2, 4.1.[1]  KST
21  explicitly "recognize[d] the benefit to its business of enabling all elements of
22  Northrop Grumman Corporation to purchase its products and related services in
23  accordance with and pursuant to this Award."  *Id.* at 1, Recital 2.  Although KST
24  had the ability to sell to the entirety of Northrop Grumman, the Award did not
25  confer exclusive seller status on KST.  KST was aware, therefore, that Northrop
26  Grumman reserved the right to obtain computer equipment from other sources.  To
27  that end, the Award did not obligate Northrop Grumman to order any minimum

28  _____
[1] The Award is attached to the Complaint as Exhibit A.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1    amount of KST's products or services.  Award at § 3.1; at 1, Recital No. 3.

2         Under Section 3 of the Award, Northrop Grumman provided KST with

3    written forecasts at the conclusion of each quarter.  Compl. ¶ 22.  These forecasts

4    represented Northrop Grumman's estimates of its projected purchasing

5    requirements, but did not obligate Northrop Grumman to purchase in accordance

6    with these estimates.  Award § 3.1.  Northrop Grumman's purchase obligations

7    were effected through the issuance of purchase orders, not forecasts.  *Id.* § 3.2.

8         The Award had an initial term of 36 months.  Compl. ¶ 21.  The parties

9    agreed to a series of extensions that ultimately extended the term until July 31,

10   2016.  *Id.*  Under Section 6 of the Award, Northrop Grumman had the right to

11   terminate the Award for convenience at any time upon written notice to KST.  *Id.* ¶

12   24.

13        In September 2015, Northrop Grumman provided a quarterly forecast of its

14   estimated needs to KST.  *Id.* ¶ 26.  On September 30, 2015, NASA suspended KST

15   from federal contracting for alleged misconduct as a subcontractor on a NASA

16   program.  *Id.* ¶ 31.

17        On November 20, 2015, KST entered into an Interim Administrative

18   Agreement ("IAA") in which it acknowledged that NASA had adequate cause to

19   suspend it based on allegations of "serious misconduct."  *See* Exhibit A, attached

20   hereto (IAA).[2]  The IAA explained that KST was the subject of a criminal

21   investigation by the United States Department of Justice ("DOJ").  IAA at §§ 1, 5.

22   The IAA lifted KST's suspension, but remained  in force pending the outcome of

23   the DOJ's investigation.  IAA at 1, § 1 ("[T]his Agreement shall remain in effect

24   _____

     [2]  KST did not attach the IAA to its Complaint, but the court may nonetheless
25   consider the IAA attached here without converting the Motion to Dismiss into a
     motion for summary judgment.  It is well-established that a district court, in ruling
26   on a motion to dismiss, "may consider a document the authenticity of which is not
     contested, and upon which the plaintiff's complaint necessarily relies."  *Schwartz v.*
27   *KPMG*, 476 F.3d 756, 763 (9th Cir. 2007).  Here, as the Complaint states, NASA
     lifted KST's suspension on November 20, 2015.  Compl. ¶ 37.  NASA did so
28   because KST entered into the IAA.  IAA at § 15.  Thus, KST necessarily relies on
     the IAA in establishing that its suspension was lifted by NASA.

MEMORANDUM OF LAW IN SUPPORT OF
                                                               MOTION TO DISMISS

1   until the conclusion of the investigation and any legal proceedings that may ensue

2   under the matter that is the subject of the pending investigation being conducted

3   under the direction of the United States Department of Justice . . . .").

4         After entering into the IAA, KST took the position that it had been "cleared"

5   by NASA.  Compl. ¶ 37.  KST requested that Northrop Grumman place orders

6   pursuant to the previously submitted forecast from September 2015.  *Id.* ¶¶ 38-39.

7         By letter to KST dated June 6, 2016, Northrop Grumman explained that it

8   would not place further orders with KST until the DOJ investigation into the

9   allegations of serious misconduct had concluded.  Compl. ¶ 41; Exhibit B, attached

10  hereto (6/6/2016 Letter from Northrop Grumman to KST).[3]  Northrop Grumman

11  further advised KST that, "given the suspension, the terms of the interim

12  administrative agreement, and the continuing federal investigation into KST's

13  activities, Northrop made a business decision to obtain from alternate sources while

14  we await the outcome of the federal investigation."  *See* Exhibit B.  KST does not

15  allege in the Complaint that Northrop Grumman stated in this letter, or elsewhere,

16  that it intended or desired to terminate the Award.

17        By letter dated July 28, 2016, Northrop Grumman again reminded KST that

18  the IAA remained in force and that the related criminal investigation had not

19  concluded.  Compl. ¶ 43; Exhibit C, attached hereto (7/28/2016 Letter from

20  Northrop Grumman to KST).[4]  Northrop Grumman explicitly stated in this letter

21  that it had not terminated the Award.  Three days later, on July 31, 2016, the third

22  and final option year of the Award expired.  Compl. ¶ 21.

23

24

25

---

26  [3] Like the IAA, Northrop Grumman attaches the full letters from it to KST setting
    forth its rationale to pause doing business with KST, excerpts of which KST
27  selectively quotes in its Complaint.  *Schwartz*, 476 F.3d at 763 (affirming district
    court's consideration of a letter referred in, but not attached to, the complaint).
28  [4] Notably, Northrop Grumman's July 28, 2016 Letter extensively discusses the
    IAA.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

## IV.   ARGUMENT

### A.   STANDARD OF DECISION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted.  Although courts must construe the complaint in the light most favorable to the plaintiff, and determine whether the complaint alleges enough facts "'to state a claim to relief that is plausible on its face,'" *Johnson v. Fed. Home Loan Mge. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *id.* at 1008 (quoting *Twombly*, 550 U.S. at 555).  A plaintiff must plead sufficient factual content to allow "the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1007.  As set forth more fully below, no reasonable inference may be drawn from the allegations in the Complaint that Northrop Grumman is liable to KST.

### B.   NORTHROP GRUMMAN DID NOT BREACH THE AWARD

KST asserts that Northrop Grumman breached the Award by: failing to provide forecasts; failing to negotiate price changes in good faith; and failing to place orders pursuant to the Award's termination for convenience clause.  In a breach of contract action, "'a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting Cal. Civ. Code § 1636).[5]  The inquiry should focus on the parties' "objective intent, as evidenced by the words of the contract." *Id.* (quotation omitted).  "'[T]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Id.* (quoting Cal. Civ. Code § 1641).

---

[5] California law applies. *See* Award § 35.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

KST's breach of contract claim fails to reflect the intention of the parties, "as evidenced by the words of the contract," *id.*, and fails to construe the Award as a whole.

### 1. NORTHROP GRUMMAN'S PURPORTED FAILURE TO PROVIDE FORECASTS WAS IMMATERIAL

KST alleges that Northrop Grumman breached the Award by failing to provide forecasts of its projected orders in accordance with Section 3.1 of the Award. Compl. ¶ 51(a). The forecasts were used to inform KST of Northrop Grumman's estimated business needs — they were tools for KST to "utilize . . . for its internal planning requirements." Award § 3.1. They were neither orders nor binding commitments to order. In fact, the very same Award provision that called for forecasts expressly provided that Northrop Grumman had "no obligation to purchase the number of units set forth in the Forecast or place an order for any minimum dollar value or quantity of Products and/or Services with Seller during the term of this Award . . . ." *Id.* In short, whether Northrop Grumman forecasted 10,000 units or zero units had no bearing on Northrop Grumman's purchase obligations.

In the Complaint, KST excises the "no obligation to order" language from the Award's "Forecast" section. By failing to read the provision as a whole, however, KST imbues the forecasts with a materiality the parties never intended and that no reasonable inference drawn from the alleged facts can support.

To recover on its claim, KST must show that the alleged breach was material. *See Hini-Szlos v. Carter*, No. B219941, 2010 WL 3704178 (Cal. Ct. App. Sept. 23, 2010) (citing 23 WILLISTON ON CONTRACTS § 63.3 (4th ed.)).[6] A breach is material

---

[6] Although this case is an unpublished California state court decision, this Court has recognized that, while California Rules of Court, Rule 8.1115 prohibits citations to unpublished decisions, a federal court exercising diversity jurisdiction is not bound by a state's procedural rules." *Inland Concrete Enterps., Inc. v. Kraft*, 318 F.R.D. 383, 405-406 (C.D. Cal. 2016) (brackets and quotation marks omitted). Further, this Court's Local Civil Rule 11-3.9, addressing "Citations," does not "purport to restrict the right of judges or parties to cite unpublished decisions." *Id.* at 406. Thus, this Court has considered unpublished California state court decisions. *Id.*

1  if it goes to the essence of a contract. *Id*. Whether a breach is material depends on

2  various factors, including the importance or seriousness of the breach and whether

3  the injured party could be compensated by damages from the breach. *Eksouzian v.*

4  *Albanese*, No. CV 13-00728, 2015 WL 4720478, at *9 (C.D. Cal. Aug. 7, 2015)

5  (citing *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (Cal. Ct. App. 2011) and

6  *Sackett v. Spindler*, 248 Cal. App. 2d 220, 229 (Cal. 1967)). California courts

7  consider materiality of breach to be a mixed question of law and fact, but "if

8  reasonable minds cannot differ on the issue of materiality, the issue may be

9  resolved as a matter of law." *Ins. Underwriters Clearing House, Inc. v. Natomas*

10  *Co.*, 184 Cal. App. 3d 1520, 1527 (Cal. Ct. App. 1986).

11       Reasonable minds cannot differ as to whether Northrop Grumman's alleged

12  failure to provide forecasts constituted a material breach of the Award. As noted

13  above, the forecasts were intended to give KST information concerning Northrop

14  Grumman's future projected purchasing requirements. The Complaint makes clear

15  that KST had that information: zero purchases until the government investigation

16  concluded. *See* Compl. ¶¶ 41, 43. To insist that Northrop Grumman breached the

17  Award because KST did not receive this information in a formal document entitled

18  "Forecasts" is to exalt form over substance, ignore the intent of the parties, and read

19  the contract in piecemeal fashion rather than as a whole.

20       The Complaint's failure to identify any damages that flow from this alleged

21  breach underscores its immaterial nature, and is also fatal to the claim. The

22  damages KST seeks arise from Northrop Grumman's alleged failure to purchase

23  inventory, not because of any impact to KST's ability to plan around estimates of

24  Northrop Grumman's future needs. As damages are an essential element of any

25  breach of contract claim, this claim must be dismissed. *Navellier v. Sletten*, 106

26  Cal. App. 4th 763, 775 (Cal. Ct. App. 2003).

27

28  Accordingly, Northrop Grumman cites cases, published and unpublished, that bear directly on the issues raised in the Complaint.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1

## 2. NORTHROP GRUMMAN DID NOT BREACH ITS DUTY TO NEGOTIATE IN GOOD FAITH UNDER SECTION 4.6

KST alleges that Northrop Grumman breached Section 4.6 of the Award. Compl. ¶ 51(b). Construing the allegations in the Complaint in the light most favorable to KST, this claim must be dismissed because, under the plain terms of the Award, Section 4.6 did not apply.

Section 4.6 of the Award required the parties to engage in good faith negotiations regarding price and/discount rates "suggested by" KST in the event Northrop Grumman expected decreases in purchase volume resulting from "the removal or divestiture of any operating elements, program adjustment, or decreased business activity . . . or otherwise . . . ." Award at § 4.6. Read in the context of the Award as a whole, Section 4.6 was intended to address the anticipated impact on future purchase volumes arising from structural and operational changes to Northrop Grumman's business. It was not intended to address the consequences of KST's "serious misconduct." In any event, the Complaint fails to allege that KST suggested any price or discount rates. On this basis alone, KST's claim for breach of Section 4.6 should be dismissed.

In addition, as the Complaint alleges, Northrop Grumman advised KST that it would not place further orders until DOJ's investigation had concluded. Compl. ¶ 41. There would be no point in negotiating "suggested" pricing on a purchase order for zero product, and no reasonable inference can be drawn that the parties intended Section 4.6 to require any such negotiations. *Minich v. Allstate Ins. Co.*, 193 Cal. App. 4th 477, 485 (Cal. Ct. App. 2011). Nor does the law require parties to engage in pointless conduct. *See In re Bankamerica Sec. Litig.*, 636 F. Supp. 419, 422 (C.D. Cal. 1986) (recognizing that "'the law abhors useless acts'").

Lastly, even assuming that Northrop Grumman breached its obligation to negotiate revised pricing, the facts as pled do not give rise to damages. Section 4.6 expressly states that Northrop Grumman had no obligation to agree to any pricing

-10-

changes suggested by KST.  Without such an obligation, KST cannot establish that it suffered any harm.  Absent an ability to allege damages, the breach claim must fail.  *Navellier*, 106 Cal. App. 4th at 775.

### 3.   NORTHROP GRUMMAN DID NOT TERMINATE THE AWARD FOR CONVENIENCE

KST alleges that Northrop Grumman breached the Award by failing to pay KST amounts owed under the termination for convenience clause.  Compl. ¶¶ 51 (c)-(e).  KST's claim assumes away a critical threshold fact, namely, that Northrop Grumman terminated the Award, by asserting in conclusory fashion that Northrop Grumman's decision to hold off placing orders equated to termination.  Compl. ¶ 51(e).  It did not.  The Award was a non-exclusive vehicle through which Northrop Grumman *could* order equipment.  The Award did not obligate Northrop Grumman to place orders against the forecast, or in any minimum quantities, or from KST at all.  Put simply, Northrop Grumman could decline to place orders without terminating the Award.

Importantly, the facts as alleged provide no basis for inferring that Northrop Grumman ever terminated the Award.  Section 6.4 of the Award explicitly states that a termination for convenience could be effected only in writing.  The Complaint does not allege that Northrop Grumman ever stated in writing that it had or intended to terminate the Award.  Instead, the Complaint alleges that Northrop Grumman's statement in a letter dated June 6, 2016 that it had made a "business decision to order from alternate sources while [it] await[ed] the outcome of the federal investigation" "constituted termination" of the Award.  *Id.* ¶¶ 41-42.  This conclusory assertion falls short of the factual pleading necessary to allege an actual termination.  Indeed, in the June 6, 2016 letter relied upon by KST, Northrop Grumman explicitly disclaimed that it had terminated the Award.  Exhibit B at 2 ("KST's assertions that Northrop has terminated the [Award] for convenience are misplaced.  The [Award] itself or a purchase order issued under the [Award] may

1   be terminated by Northrop only by written notice to KST, which has not been

2   provided.").  The Complaint further references a July 28, 2016 letter from Northrop

3   Grumman.  Compl. ¶ 43.  In that letter, Northrop Grumman made the same

4   disclaimer.  Exhibit C at 2.

5          Apparently recognizing that it failed to allege the facts necessary to support a

6   claim based upon a "written notice of termination," KST argues in the alternative

7   that Northrop Grumman "constructively" terminated the Award.  Compl. ¶ 51(e).

8   Cases interpreting "termination for convenience" clauses make clear that such

9   provisions are enforced according to their terms.  *See Enforcement Support Agency,*

10  *Inc. v. Cnty. of San Diego*, No. D057315, 2011 WL 5416185, at *3-4 (Cal. Ct. App.

11  Nov. 9, 2011) (court enforced termination for convenience clause despite

12  terminating party's failure to engage in contract's mandatory dispute escalation

13  procedures because the two provisions were independent of each other).  KST's

14  claim of constructive termination contradicts Section 6.4's requirement that a

15  termination for convenience be accomplished by writing.  As California law

16  requires contracts to be interpreted according to their terms, KST's "constructive

17  termination" claim must fail.  *Minich*, 193 Cal. App. 4th at 485.

## C.   NORTHROP GRUMMAN DID NOT BREACH ITS DUTY OF GOOD FAITH AND FAIR DEALING

18

19

20          In its second cause of action, KST asserts that Northrop Grumman breached

21  the covenant of good faith and fair dealing.  Compl. ¶¶ 53-57.  In support of this

22  claim, KST alleges that Northrop Grumman breached its duty by failing to place

23  orders after September 30, 2015 (*i.e.*, after KST was suspended by NASA), failing

24  to advise KST of future projected requirements, and/or failing to advise KST that

25  Northrop Grumman was terminating the Award for convenience.  *Id.* ¶ 55.  KST's

26  claim fails because it seeks to impose obligations on Northrop Grumman that are

27  inconsistent with the express terms of the Award.  *Carma Developers v. Marathon*

28  *Dev.*, 2 Cal. 4th 342, 373 (Cal. 1992) (holding that the express terms of a contract

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

limit the scope of conduct prohibited by the covenant of good faith and fair dealing). In addition, the facts alleged in the Complaint cannot support a reasonable inference that Northrop Grumman lacked subjective good faith or that its conduct was objectively unreasonable. Accordingly, KST's second cause of action must be dismissed.

## 1. KST SEEKS TO IMPOSE IMPLIED DUTIES THAT CONTRADICT THE AWARD'S EXPRESS TERMS

The implied duty of good faith and fair dealing prohibits a party from engaging in conduct that runs counter to the expectations of the parties or undermines the purpose of their contract. Importantly, however, the "scope of conduct prohibited by the covenant of good faith *is circumscribed by the purposes and express terms of the contract.*" *Carma Developers*, 2 Cal. 4th at 373 (emphasis added). In short, the duty does not operate to change unambiguous contract terms. In *Carma Developers*, for example, the court rejected plaintiff's claim that a developer breached the duty of good faith and fair dealing by terminating a lease because the contract expressly permitted such action. The court noted that it was unaware of any reported case holding that "the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement." *Id.* at 374.

KST's claim seeks to change the Award's unambiguous terms. In particular, KST asserts that Northrop Grumman had an implied duty to place orders "after September 15, 2015 . . . ." Compl. ¶ 55(a). As discussed above, however, the Award explicitly stated that Northrop Grumman had no obligation to place orders against forecasts, or even to place a minimum order for any quantity or dollar amount. Because this aspect of KST's claim directly contravenes the Award's unambiguous terms, it must be dismissed.

KST also claims that Northrop Grumman had an implied duty to provide "projected future requirements." Compl. ¶55(b). This claim is virtually identical to

the breach of contract claim premised on the alleged failure to issue forecasts, and must be dismissed for the same reasons:  Northrop Grumman provided its projected future requirements to KST (no orders until the federal criminal investigation concluded).  In any event, KST has not alleged any damages flowing from this alleged breach.

Finally, KST claims that Northrop Grumman failed to advise KST that it was terminating the Award for convenience.  This claim is wrong, superfluous, and nonsensical.  The Award's unambiguous terms provided that a termination for convenience had to be effected in writing.  The Award could not be terminated surreptitiously. Accordingly, the Award was either terminated for convenience, or it was not.  If it was terminated (as previously discussed, it was not), KST must turn to the Award's termination provision for its remedy.  By seeking a different outcome, KST's claim contravenes the terms of the Award.  If the Award was not terminated, then Northrop Grumman had no duty to advise of something that did not occur.

**2.    NO REASONABLE INFERENCE CAN BE DRAWN FROM THE COMPLAINT THAT NORTHROP GRUMMAN LACKED SUBJECTIVE GOOD FAITH OR THAT ITS CONDUCT WAS OBJECTIVELY UNREASONABLE**

A party violates the duty of good faith and fair dealing if (1) it subjectively lacks belief in the validity of its act, or (2) if its conduct is objectively unreasonable. *Carma Developers*, 2 Cal. 4th at 372; *Unical Enterps., Inc. v. Am. Ins. Co.*, No. CV 05-3511 CBM, 2005 WL 6133691, at *4 (C.D. Cal. Dec. 14, 2005).  No reasonable inference can be drawn from the facts alleged in the Complaint that Northrop Grumman lacked a good faith belief in the validity of its conduct or that its conduct was objectively unreasonable.   First, as the Complaint states, NASA suspended KST on September 30, 2015.  Compl. ¶ 31.  Following the suspension, KST and NASA entered into the IAA.  The IAA stated that NASA had adequate evidence to suspend KST based on allegations of "serious misconduct."  KST acknowledged in

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1  the IAA that adequate cause existed for its suspension, that it still was under

2  criminal investigation by DOJ, and that the IAA would remain in place until the

3  conclusion of that investigation.  IAA at 1(D); §§ 1, 5.

4       As the Complaint makes clear, Northrop Grumman told KST that it had

5  "made a business decision to order from alternate sources" while Northrop

6  Grumman awaited "the outcome of the federal investigation."  Compl. ¶ 41.  In the

7  July 28, 2016 letter, an excerpt of which KST quotes in paragraph 43 of the

8  Complaint, Northrop Grumman also explained that it "was hopeful that KST could

9  address and resolve the serious questions being raised by DOJ's criminal

10  investigation notwithstanding the *Interim Administrative Agreement* notably stating

11  that KST would no longer be eligible to work directly or indirectly on NASA's

12  ACES contract other than to closeout its subcontract.  If the investigations cleared

13  KST of wrongdoing during the term of the contract, Northrop Grumman could have

14  resumed purchases." Exhibit C at 2 (italics in original).  In sum, the facts alleged

15  demonstrate that Northrop Grumman had a good faith basis for its actions.  Under

16  these circumstances, KST's claim for breach of the implied duty of good faith and

17  fair dealing must fail.  *Carma*, 2 Cal. 4th at 372.

18       The allegations in the Complaint also make clear that Northrop Grumman's

19  conduct was objectively reasonable.  KST did not have exclusive rights to sell to

20  Northrop Grumman; nor did Northrop Grumman have an obligation to place orders

21  under the Award.  Given the allegations of "serious misconduct," KST's

22  acknowledgement that adequate cause existed for the suspension, and the ongoing

23  criminal investigation, Northrop Grumman could not be certain as to KST's

24  continued eligibility for federal contracting.[7]  But Northrop Grumman continued to

25  have business needs that required it to purchase computer equipment.  Northrop

26

27

28

---

[7] KST's allegations that the Award and the Federal Acquisition Regulation did not prevent Northrop Grumman from continuing to purchase from KST during the pendency of its suspension, Compl. ¶¶ 32, 33, are irrelevant, and cannot support an inference that Northrop Grumman acted *unreasonably* by not issuing purchase orders to a subcontractor under criminal investigation by the federal government.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS

1   Grumman's decision to secure alternate sources while keeping the KST contract

2   open in the event the criminal investigation into KST was favorably resolved was

3   eminently reasonable.  *See* Exhibit C at 2.

4         Accordingly, KST's claim for the breach of the covenant of good faith and

5   fair dealing should be dismissed.

6   **D.    KST'S PROMISSORY ESTOPPEL CLAIM IS SUPERFLUOUS AND LACKS THE ESSENTIAL ELEMENT OF JUSTIFIABLE**

7   **RELIANCE**

8         The Complaint's third cause of action alleges promissory estoppel.  Compl.

9   ¶¶ 58-61.  Specifically, KST alleges that, at various times between September 2015

10  and June 2016, Northrop Grumman promised to issue purchase orders to KST, and

11  that KST relied upon these promises to procure equipment.  *Id.* ¶¶ 59-60.  Like the

12  other claims, this claim fails as a matter of law and should be dismissed.

13        Under California law, a "reliance" or a promissory estoppel claim has four

14  elements: (1) a promise clear and unambiguous in its terms; (2) reliance by the

15  party to whom the promise is made; (3) the reliance must be both reasonable and

16  foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.

17  *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (Cal. Ct. App. 2005).

18  California law, however, does not permit recovery under promissory estoppel if

19  there is a contract.  *Healy v. Brewster*, 380 P.2d 817, 822 (Ca. 1963);  *Odinma v.*

20  *Aurora Loan Servs.*, 2010 WL 2232169, at *10 (N.D. Cal. 2010) ("[T]he existence

21  of a contract bars application of promissory estoppel.").  Indeed, a reliance claim

22  and a breach of contract claim are distinct and mutually exclusive.  *Douglas E.*

23  *Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 243 (Cal. Ct. App.

24  2012) ("promissory estoppel is distinct from contract in that the promisee's

25  justifiable and detrimental reliance on the promise is regarded as a substitute for the

26  consideration required as an element of an enforceable contract").  In *Money Store*

27  *v. Southern California Bank*, 98 Cal. App. 4th 722, 731 (Cal. Ct. App. 2002), the

28  court explained that where the parties have entered into a contract, a promissory

-16-

1    estoppel claim is "superfluous."

2    　　　KST alleges the existence of a contract between KST and Northrop

3    Grumman, namely, the Award.  Therefore, in the words of the California Court of

4    Appeal, KST's promissory estoppel claim is "superfluous" and must be dismissed.

5    *See id.*

6    　　　Even if KST could assert a reliance claim, no reasonable inference could be

7    drawn from the facts as alleged that the reliance was justified, or that any damages

8    flowed from it.  *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 893

9    (Cal. Ct. App. 1976).  KST vaguely alleges that Northrop Grumman made promises

10   between September 2015 and June 2016 to place purchase orders. *Id.* ¶ 59.  The

11   Complaint does not identify who made these promises, when they were made, or

12   what quantities they involved.  KST alleges in conclusory fashion that it procured

13   equipment based on these alleged promises, but fails to allege any facts concerning

14   those procurements.  *Id*. ¶ 60. KST seeks damages of $5,000,000 based on these

15   alleged promises and the alleged resultant procurements.  *Id.* ¶ 61.

16   　　　This is the same amount KST seeks to recover for the inventory equipment it

17   allegedly procured based on forecasts Northrop Grumman provided under the

18   Award.  *Compare* Compl. ¶ 27 ("The inventory of equipment that KST ordered

19   from HP in response to Northrop's forecasts from September 2015 and earlier was

20   ordered pursuant to a pricing arrangement that Northrop had with HP . . . .") *with*

21   Compl. ¶¶ 59-60 ("At various times between September 2015 and June 2016,

22   Northrop . . . promised to issue purchase orders to KST . . . [i]n reasonable reliance

23   on Defendant's promises, KST procured equipment from HP . . . .").

24   　　　KST does not allege that there are two separate pools of inventory worth

25   $5,000,000.00 each at issue in this case.  Thus, KST either procured the inventory

26   equipment at issue based on forecasts from September 2015 and earlier, or it

27   procured the equipment based on promises made from September 2015 and after.

28   KST cannot have it both ways.  Either way, the promissory estoppel claim fails.  If

-17-

1     KST procured the equipment based on forecasts, then it did not rely on the alleged

2     post-September 2015 promises.  If KST procured the equipment based on the post-

3     September 2015 promises, then its reliance was unjustified, as KST was well aware

4     (and the Complaint clearly alleges) that Northrop Grumman had consistently and

5     clearly advised that no orders would be made until the criminal investigation

6     concluded.  *Laks*, 60 Cal. App. 3d at 893.

7     **V.     CONCLUSION**

8          For the foregoing reasons, Plaintiff's Complaint should be dismissed in its

9     entirety, with prejudice.

10     DATED: July 19, 2017         **PERKINS COIE LLP**

11

12                       By: */s/ Bruce V. Spiva*

13                        Bruce V. Spiva, Bar No. 164032
                          BSpiva@perkinscoie.com

14                        Attorneys for Defendant
                        NORTHROP GRUMMAN SYSTEMS

15                        CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS