Randall S. Leff (SBN 77148)
  rleff@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

LATHAM & WATKINS LLP
  David J. Schindler (Bar No. 130490)
    *david.schindler@lw.com*
  R. Peter Durning, Jr. (Bar No. 277968)
    *peter.durning@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

LATHAM & WATKINS LLP
  Kyle R. Jefcoat (admitted *pro hac vice*)
    *kyle.jefcoat@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Attorneys for Plaintiff
KST Data, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KST DATA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NORTHROP GRUMMAN SYSTEMS CORPORATION, a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:17-CV-5125-MWF-PJW<br><br>The Hon. Michael W. Fitzgerald<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>1. **BREACH OF CONTRACT;**<br><br>2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; and**<br><br>3. **PROMISSORY ESTOPPEL**<br><br>Trial Date: None |

1. Plaintiff, KST DATA, INC. ("**KST**"), for its First Amended Complaint against Defendant NORTHROP GRUMMAN SYSTEMS CORPORATION ("**Northrop**"), alleges as follows:

## NATURE OF THE ACTION

2. This action seeks damages incurred by KST as a result of Northrop's failure to pay for various products including desktop, laptop, and workstation computers obtained by KST for Northrop pursuant to a written Corporate Award #3263, Desktop Solution Program ("DSP"), between Northrop and KST (the "**Contract**," attached hereto as **Exhibit A**). As set forth below, Northrop's conduct constitutes breach of contract.

## THE PARTIES

3. KST is a California corporation, with its principal place of business in Los Angeles, California.

4. Northrop is a Delaware corporation, which operates facilities in various locations across the country including in Redondo Beach, California. At the time the Contract was formed, Northrop was headquartered in Los Angeles, California.

5. KST does not currently know the true names, addresses, and capacities of the defendants identified herein as Does 1 through 10, inclusive, and therefore sues those defendants by their fictitious names. When the true name and capacity of a Doe defendant has been ascertained, KST will amend this First Amended Complaint pursuant to Code of Civil Procedure section 474. KST is informed and believes, and on that basis alleges, that each fictitiously named defendant is an agent, employee, representative, alter ego, or co-conspirator of each other defendant and is responsible in some manner for the wrongful acts alleged. As to the fictitiously named defendants who are agents, employees, or representatives, those defendants who are their principles directed, authorized, participated in or ratified their wrongful acts of omissions.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00.

7. This Court has personal jurisdiction over Northrop because Northrop, at the time it entered the Contract, had its principal place of business in Los Angeles, California. Furthermore, Northrop conducts business within California, has entered into contracts in California, and has other relevant contracts with California. A significant part of the services performed by KST for Northrop that give rise to this First Amended Complaint were performed in California pursuant to the parties' written Contract, which provides: "This Award is subject to and shall be governed by the laws of the State of California, excluding its choice of law provisions." (Exh. A at § 35.) This Court's exercise of jurisdiction over Northrop is reasonable and comports with requirements of fair play and substantial justice.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1441(a), because this Court is the federal judicial district embracing the Los Angeles County Superior Court, where the suit was originally filed. 28 U.S.C. § 84(c). In addition, Northrop was to perform under the Contract by making payments to KST in Los Angeles, California, and liability arose there for Northrop's failure to do so. Northrop also made the Contract in Los Angeles County where both KST and Northrop were headquartered at the time the Contract was made.

## FACTUAL ALLEGATIONS

### *General Allegations*

9. KST is engaged in the business of providing information technology equipment, including desktop, laptop, and workstation computers to firms. In particular, KST orders and holds customer-specific inventory from computer manufacturers and distributors so that when KST's ultimate customers, such as

Northrop, order equipment, KST can deliver that equipment in a matter of days rather than the weeks that would be required if KST's customers ordered directly from original computer manufacturers or distributors.

10. Northrop designs, develops, and manufactures defense electronics and systems such as radar systems, surveillance systems, communications systems, precision weapons, and sensors.

11. Before entering into the Contract, Northrop purchased the products and services it currently purchases from KST from many different vendors. Managing many suppliers of the same products resulted in significant and unnecessary costs for Northrop.

12. Under the Contract, KST provided various products (including desktops, laptops, and workstation computers) to Northrop.

13. The Contract allows Northrop to streamline its company-wide purchasing of these products by using a single-source, KST, as its supplier.

14. KST served as a supplier to Northrop under the Contract for approximately twenty (20) years from 1995 through 2015.

15. KST's performance of the Contract terms over the last two decades has saved Northrop many millions of dollars.

16. For KST to meet delivery and service level requirements in the Contract, KST needed to pre-stock the products covered under the Contract. As such, KST relied on Northrop's regular forecast, and a weekly product order and planning call to coordinate inventory order planning to eliminate delays in fulfilling Northrop's orders. After receiving Northrop's forecasts and planning calls, KST would then purchase the necessary inventory so that it could quickly fulfill Northrop's orders as they came in.

17. Pre-stocking inventory based on Northrop's forecasts was necessary because Northrop required KST to deliver products in as little as three (3) days.

18. Northrop was aware that KST relied upon Northrop forecasts and

planning calls to purchase products from KST's supply chain.

19. Northrop, on a weekly basis, held calls with KST in which Northrop inquired as to how many and what types of computers KST had in stock. During those calls, Northrop would frequently direct and instruct KST to order computers to prepare for future Northrop purchase orders.

20. The parties followed this general course of conduct for approximately two decades.

21. Prior to September 2015, during the parties' approximately two decade relationship, Northrop never failed to place orders for all of the products which Northrop included in its forecasts to KST.

*Contract Provisions*

22. The parties' dispute arises out of and relates to the Contract, which became effective on August 1, 2010, pursuant to which KST agreed to provide certain equipment to Northrop in exchange for payment.

23. The Contract was originally to be effective for thirty-six (36) months, however, the Contract was subsequently extended to be effective through July 31, 2016.

24. Section 3.1 of the Contract required Northrop to provide quarterly "forecasts" of its good faith estimated purchasing volume, regular tracking of its equipment requirements and delivery schedules.

25. Under Section 4.6 of the Contract, Northrop was further required to negotiate in good faith if there was a substantial decrease in purchasing volume.

26. Section 6.4 of the Contract stated: "This Award and any Purchase Order issued subject to it may be terminated in whole or in part by Buyer [Northrop], at any time and for any reason, upon written notice to Seller [KST]. In the event of such termination, Buyer's sole obligation to Seller shall be to pay for, at the contracted prices under this Award, all items placed on current purchase orders plus up to 4500 units including associated peripherals that were part of Buyer's

forecast."

27. Section 6.4 does not require any particular format, notice or language to effect a termination for convenience, other than the requirement that the termination be in writing. Moreover, the provision has no prerequisite or other basis that must be invoked to effect a termination for the convenience of Northrop.

### *Northrop's Termination of the Contract*

28. In September 2015, Northrop provided KST with a quarterly forecast for Hewlett Packard ("**HP**") devices. KST purchased units in accordance with Northrop's forecast.

29. The inventory of equipment that KST ordered from HP in response to Northrop's forecasts from September 2015 and earlier was ordered pursuant to a pricing arrangement that Northrop had with HP. That pricing arrangement prohibited KST from reselling the customer-specific HP inventory to any purchaser other than Northrop.

30. Moreover, the inventory of HP equipment that KST ordered from HP in response to Northrop's forecasts from September 2015 and earlier was customized to Northrop specifications and could not be sold to another purchaser without substantial costs to change the configuration to resell to a different customer.

31. Furthermore, some of the configuration requirements requested by Northrop were unique to Northrop and thus made the computers less desirable and worth considerably less to other potential buyers than they were worth to Northrop. For instance, the configuration specified by Northrop required the laptops have no cameras included and Northrop desktops used AMD processors instead of Intel processors

32. Although KST purchased these units in accordance with Northrop's forecast, Northrop never placed purchase orders for any of the forecasted units.

33. Northrop's apparent rationale for not placing purchase orders for these forecasted units was that, for a period of less than two months from September 30,

2015 until November 20, 2015, KST was suspended by the National Aeronautics and Space Administration ("**NASA**") from receiving new federal contracts.

34. There was no provision in the Contract which permitted or required Northrop to suspend placing orders with KST because of the NASA suspension.

35. Indeed, the Federal Acquisition Regulations ("**FAR**") did not prevent NASA or any agency from continuing to work with a suspended contractor: "Notwithstanding the debarment, suspension, or proposed debarment of a contractor, agencies **may continue contracts or subcontracts in existence** at the time the contractor was debarred, suspended, or proposed for debarment." 48 C.F.R. § 9.405-1(a) (*emphasis added*).

36. Moreover, federal suspension or debarment do not apply to nonfederal contracts such as the Contract, which was for Northrop's internal use.

37. During the pendency of the suspension, Northrop repeatedly advised KST that Northrop would issue orders to KST when the suspension was lifted. For instance, on November 17, 2015, Northrop sent an email to KST stating: "We included KST in our proposal. If awarded we would be prepared to issue POs to our suppliers and your quotes required us to place an order prior to 11/30. We need an update and date when your debarment will be lifted."

38. Further, after the suspension was lifted, Northrop continued to indicate to KST that orders would be coming soon. For example, on November 25, 2015, Northrop represented to KST that it was just "waiting for an 'official all-clear'" to resume purchasing these units. At this time, Northrop clearly was aware of the inventory that KST already had in stock or in transit to KST warehouses in support of the Northrop provided forecasts and requirements to order and stock.

39. However, even after NASA lifted the suspension on November 20, 2015, Northrop did not place any of the forecasted orders or any other order with KST. Months passed, but Northrop did not place any orders even though the suspension had been cleared.

7     FIRST AMENDED COMPLAINT FOR DAMAGES

40. Northrop was well aware that KST was holding the HP inventory to potentially fill Northrop purchase orders. On March 6, 2016, KST wrote to Northrop: "We are hoping that we get some good news and actions towards buying the inventory that we are holding based on NG instructions to buy / stock. … We are just looking for NG to honor the current pre-ordering, stocking process and the commitment to buy the standard models that we ordered into our inventory based on NG forecast, and pre-buy instructions."

41. Moreover, on April 20, 2016, KST wrote to Northrop: "KST has been holding on to current Northrop Grumman specific configuration inventory that were forecasted, requested in writing and directed by Northrop Grumman for KST to stage and stock, in support of upcoming requirements and pending orders for over 6 months."

42. Although Northrop represented to KST that its lack of purchasing volume was only temporary, Northrop stopped providing the required quarterly forecasts and failed to order any additional units under the Contract.

43. On June 6, 2016, Northrop wrote to KST and informed KST that "Northrop made a business decision to order from alternate sources while we await the outcome of the federal investigation."

44. Two days later, KST responded by letter and noted that Northrop's statements and actions constituted termination of the Contract under paragraph 6.4.

45. In a July 28, 2016 letter –prior to the expiration of the Contract's term – Northrop made clear that it had no intention of placing any further orders with KST: "With the investigation of KST on-going, Northrop Grumman moved forward with the purchase of the equipment it needed from another vendor and has since upgraded the computer models it is purchasing for internal use."

46. In response to these communications, Northrop did not amend its forecast or provide any direction to KST to expect no further orders until June 6, 2016.

8       FIRST AMENDED COMPLAINT FOR DAMAGES

47. In reliance on Northrop's stated and unchanged forecast, Northrop's indications that it would resume ordering at various times, and Northrop's failure to terminate the contract in writing until June 2016, KST continued to hold these units.

48. Beginning in November 2015 and continuing through and beyond the termination of the Contract, KST engaged consultants and counsel in an effort to negotiate with Northrop regarding the suspension of orders and the purchase by Northrop of the inventory which KST continued to hold.

49. KST received no further payment from Northrop. There is now due, owing, and unpaid from Northrop to KST an amount in excess of $5,000,000.

50. Northrop's failure to pay what it owes KST constitutes a breach of its material obligations under the Contract.

## FIRST CAUSE OF ACTION

**(Breach of Contract)**
*(By Plaintiff against all Defendants)*

51. KST incorporates by reference and realleges each allegation in Paragraphs 1-50 as though set forth fully herein.

52. The Contract is a valid and enforceable written contract.

53. KST has fully performed all acts, services, and conditions required by the Contract, and KST's performance fully satisfied the obligations it undertook pursuant to the Contract. Any conditions required for Northrop's performance have occurred.

54. Northrop and its co-defendants breached the Contract by:
    a.    failing to provide forecasts of its projected orders in accordance with Section 3.1 of the Contract;
    b.    failing to negotiate in good faith when Northrop knew that its requirements would be materially below expected baselines in accordance with Section 4.6 of the Contract;
    c.    terminating the Contract for convenience through written

correspondence on June 6, 2016 and failing to pay amounts owed as a consequence of that termination;

d. terminating the Contract for convenience through written correspondence on July 28, 2016 and failing to pay amounts owed as a consequence of that termination; and/or

e. constructively terminating the Contract for convenience through its conduct from October 1, 2015 through July 28, 2016 and failing to pay amounts owed as a consequence of that termination.

55. As a direct and proximate result of Defendants' breach of the Contract, KST has suffered, and continues to suffer, damages in an amount to be determined at trial, but not less than an amount in excess of $5,000,000.

## SECOND CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing)**

(By Plaintiff against all Defendants)

56. KST incorporates by reference and realleges each allegation in Paragraphs 1-55 as though set forth fully herein.

57. Northrop and its co-defendants failed to work with KST in good faith for over six months when Northrop repeatedly indicated that it planned to resume purchasing based on its September 2015 forecast, in breach of the implied covenant of good faith and fair dealing.

58. Without limitation, Northrop and its co-defendants breached the covenant of good faith and fair dealing by failing to:

a. place orders with KST after September 30, 2015 with no Contract clause that justified such a failure;

b. advise KST of projected future requirements; and/or

c. advise KST that Northrop was terminating the Contract for convenience.

59. Northrop's improper object in so conducting itself was, on information and belief, at all times to delay, and if possible in whole or in part avoid, payment of KST's legitimate claims.

60. As a direct and proximate result of Defendants' conduct, KST has suffered, and continues to suffer, damages in an amount to be determined at trial, but not less than an amount in excess of $5,000,000.

## THIRD CAUSE OF ACTION

**(Promissory Estoppel)**
*(By Plaintiff against all Defendants)*

61. KST incorporates by reference and realleges each allegation in Paragraphs 1-60 as though set forth fully herein.

62. Even if the Contract is not enforceable as a legally binding contract, Northrop promised to:

    a. provide KST with quarterly forecasts of its projected orders in accordance with Section 3.1 of the Contract;

    b. negotiate in good faith when Northrop knew that its requirements would be materially below expected baselines in accordance with Section 4.6 of the Contract;

    c. pay KST for up to 4500 units including associated peripherals for computer inventory that KST acquired in accordance with Northrop's forecasts upon Northrop's termination of the Contract for convenience;

    d. pay KST for up to 4500 units including associated peripherals for computer inventory that KST acquired in accordance with Northrop's forecasts upon Northrop's termination of the business relationship with KST; and/or

    e. place purchase orders for the computer inventory regarding which Northrop had provided KST with forecasts – based on the

      parties approximately twenty-year business relationship, including Northrop's consistent placement of orders for all computers included in its prior forecasts.

63. In reasonable reliance on Defendants' promises, KST

    a. procured expensive equipment from HP, for ultimate transfer to Northrop. KST's procurements were a foreseeable result of Northrop's promises;

    b. held the inventory and did not attempt to sell the inventory to another buyer before the value of the inventory was reduced; KST's holding of the inventory was a foreseeable result of Northrop's promises; and/or

    c. engaged consultants and counsel in an effort to engage Northrop in negotiations regarding the suspension of orders and the purchase by Northrop of the inventory which KST continued to hold; KST's engagement of consultants and counsel was a foreseeable result of Northrop's promises

64. As a direct and proximate result of Defendants' conduct, KST has suffered, and continues to suffer, damages in an amount to be determined at trial, but not less than an amount in excess of $5,000,000.

## **PRAYER FOR RELIEF**

WHEREFORE, KST prays for judgment against Northrop as follows:

1. For an award of damages in an amount to be proven at trial, but not less than an amount in excess of $5,000,000;

2. For an award of pre-judgment and post-judgment interest on all applicable amounts;

3. For such other and further relief as the Court may deem just and proper.

| | | |
|---|---|---|
| DATED: September 11, 2017 | LATHAM & WATKINS LLP | |
| | Kyle R. Jefcoat | |
| | | |
| | By: /s/ Kyle R. Jefcoat | |
| | Kyle R. Jefcoat | |
| | Attorneys for Plaintiff, KST DATA, INC. | |